**FIRST DIVISION
ELLINGTON, C. J.,
PHIPPS, P. J., and DILLARD, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/**

**March 15, 2013**

# In the Court of Appeals of Georgia

A12A1726. SMITH v. THE STATE.

PHIPPS, Presiding Judge.

Thaddeus Tyrell Smith appeals his convictions for aggravated child molestation, child molestation, and two counts of cruelty to children in the first degree. He contends that the evidence was insufficient to support his convictions and that, for sentencing purposes, his convictions for child molestation and cruelty to children must be vacated because they merged with the crime of aggravated child molestation. For the reasons that follow, we affirm.

1. Smith contends that the evidence was insufficient to support his convictions. We disagree.

In resolving [Smith]'s challenge to the sufficiency of the evidence, we view the evidence in a light favorable to the jury's verdict. Weighing the evidence and determining witness credibility are beyond

the purview of this [c]ourt. We simply assess whether the evidence was sufficient to find [Smith] guilty beyond a reasonable doubt.[1]

Viewed in this light, the evidence showed the following. In February 2007, the mother of then seven-year-old C. W. questioned the child regarding an alleged incident of C. W. acting out sexually with another child; C. W. had allegedly tried to kiss a boy whose pants were pulled down. The mother testified that C. W. initially denied the allegations. According to the mother, she explained to C. W. that she needed to know why C. W. felt as though her conduct was okay. The mother testified that C. W. started shaking and crying, and said "Tyrell did it to me." C. W. further told her mother that "Tyrell," who was her mother's former boyfriend, had hurt her and had told her not to tell anyone. The next day the mother took C. W. to a police station to make a report. C. W. was interviewed and examined by various professionals.

The mother testified that she had begun dating Smith in 2003, when C. W. was three years old. Their relationship progressed and about six to seven months later, she and C. W. moved in with Smith. During the time that C. W. and her mother lived with Smith, C. W. attended a "Head Start" program during the daytime. After living with

---

[1] *Best v. State*, 279 Ga. App. 309 (1) (630 SE2d 900) (2006) (footnote omitted).

Smith for seven to eight months, the mother ended her relationship with Smith, and she and C. W. moved out of Smith's home. The mother and C. W. moved into an apartment, and C. W. started kindergarten. The mother and Smith dated for a total of one and one half years. As far as C. W.'s contact with Smith after the mother's relationship with Smith had ended, the mother testified that on one occasion when C. W. was seven years old, Smith, alone, had taken his infant son and C. W. to a restaurant for a birthday party.

At the time of trial, C. W. was ten years old. C. W. testified, using anatomical drawings, that on more than one occasion, Smith had put his "private part" inside her front private part, and on the outside and inside of her back private part. C. W. testified that these acts occurred when she was in the Head Start program. She also recalled that Smith had touched her in "both" of her private parts, at his apartment, after he had taken her and his infant son to a restaurant. C. W. testified that she had bad memories of Smith touching her when she was in the Head Start program.

A clinically licensed social worker who interviewed C. W. testified that C. W. told her that Smith had placed his private part inside her "bottom" and inside her "tootie," too.

(a) *Child molestation and aggravated child molestation.* A person commits the offense of child molestation when he "[d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person."[2] The indictment pertinently charged that Smith committed child molestation when he "did an immoral or indecent act to [C. W.], a child under the age of 16, with the intent to arouse or satisfy the sexual desires of the accused, by touching her vaginal area with his penis."

A person commits the offense of aggravated child molestation when he "commits an offense of child molestation which act physically injures the child or involves an act of sodomy."[3] A person commits the offense of sodomy when he "performs or submits to any sexual act involving the sex organs of one person and the mouth or anus of another."[4] The indictment pertinently charged that Smith committed aggravated child molestation when he "did an immoral or indecent act to [C. W.], a child under the age of 16, with the intent to arouse or satisfy the sexual desires of the accused, and which involved an act of sodomy, by touching her anus with his penis."

---

[2] OCGA § 16-6-4 (a) (1).

[3] OCGA § 16-6-4 (c).

[4] OCGA § 16-6-2 (a) (1).

4

"[T]he testimony of a victim of child molestation or aggravated child molestation need not be corroborated."[5] "The testimony of one witness is generally sufficient to establish a fact."[6] And

> [w]itnesses are not required to describe the acts constituting the commission of crimes in statutory or technical language in order to prove the commission of such acts. Rather, the terms used by witnesses to describe criminal acts may be considered in context to provide meaning, and jurors can be presumed to have some knowledge of slang expressions in common parlance in the vernacular.[7]

Here, the victim's testimony, use of anatomical drawings, and use of the term "private parts" to describe the touching that occurred authorized the jury to infer contact between Smith's penis and C. W.'s vagina, and Smith's penis and C. W.'s anus, and established the child molestation and aggravated child molestation charges as alleged

---

[5] *Mote v. State*, 297 Ga. App. 13, 14 (1) (a) (676 SE2d 379) (2009) (citation and punctuation omitted).

[6] *Cortez v. State*, 286 Ga. App. 170, 172 (1) (a) (648 SE2d 488) (2007) (footnote omitted).

[7] *Flewelling v. State*, 300 Ga. App. 505, 508 (1) (685 SE2d 758) (2009) (citations and punctuation omitted).

5

in the indictment.[8] Thus, C. W.'s testimony was sufficient to support Smith's convictions for child molestation and aggravated child molestation.[9]

Smith concedes that C. W.'s "testimony alone [wa]s sufficient to sustain a conviction under Section 16-6-4." But he asserts that "there were other witnesses['] testimony that should be viewed in conjunction with the testimony of [C. W.]." However, Smith's argument addresses conflicts in the testimony and, as such, goes to the weight to be given to such evidence, which is solely in the province of the jury and does not provide a basis for reversal on appeal.[10] Furthermore, "[t]o the extent [C. W.]'s testimony at trial was not entirely consistent with her former statements to the social worker, this presented a credibility question to be resolved by the jury."[11]

---

[8] See *Hargrave v. State*, 311 Ga. App. 852, 856 (2) (717 SE2d 485) (2011) (child molestation conviction affirmed; victim used anatomical drawings to indicate that defendant touched her on her "private part"); *Gioia v. State*, 307 Ga. App. 319, 320 (1) (704 SE2d 481) (2010) (convictions for aggravated child molestation and child molestation affirmed where descriptions of acts using the terms "private parts" and "private area" were sufficient to enable a rational trier of fact to find defendant guilty beyond a reasonable doubt).

[9] See *Keith v. State*, 279 Ga. App. 819, 821 (2) (632 SE2d 669) (2006) (child's testimony alone was sufficient to support conviction for child molestation).

[10] *Payne v. State*, 269 Ga. App. 662, 664 (605 SE2d 75) (2004).

[11] *Hargrave*, supra (citation and punctuation omitted).

(b) *Cruelty to children in the first degree.* "Any person commits the offense of cruelty to children in the first degree when such person maliciously causes a child under the age of 18 cruel or excessive physical or mental pain."[12] The indictment charged Smith with two counts of cruelty to children in the first degree, in that Smith "did maliciously cause [C. W.], a child under the age of 18, cruel mental pain by touching her vaginal area with his penis" and that Smith "did maliciously cause [C. W.], a child under the age of 18, cruel mental pain by touching her anus with his penis."

> The determination of what is cruel or excessive physical or mental pain is to be made by the jury. "Cruel" and "excessive" are adjectives which inherently require a consideration of degree; the law does not set a bright line but leaves to the trier of fact, taking into account societal norms generally accepted, whether certain behavior inflicts "cruel" or "excessive" pain (in this instance, mental rather than physical pain). There will be a gray area where some would say it is and some would say it is not, and neither is wrong as a matter of law. There will be other areas on each end of the scale. We must determine only whether the circumstances here, taking into account the evidence in favor of the finding and all reasonable inferences from that evidence, would prohibit the finding made by the jury. Moreover, a determination of what

---

[12] OCGA § 16-5-70 (b).

7

constitutes excessive mental pain need not depend solely on the victim's testimony.[13]

C. W. testified that when she was in the Head Start program, she had bad memories about Smith touching her. The mother testified that C. W. told her that Smith had hurt her, and that she had told Smith to stop several times and he refused. The mother testified that after C. W.'s outcry, she had not talked with C. W. about what Smith had done "because when you bring it up, she gets really hurt, sick-looking, her face," and she "shuts down."

The mother recalled that shortly after Smith had taken C. W. to the restaurant for a birthday party, C. W., who was an honor roll student and generally did not have behavioral issues, started getting in trouble at school. The mother described: "[S]he was getting really angry and pushing children and just not – not her normal sweet self." The mother recalled also that within a month or two after she and C. W. had moved in with Smith, C. W., who for a year had been fully trained to use the toilet, "regressed to wetting the bed at night," and "[e]ven to this day she still wears Pull-Ups." The mother further recalled that C. W. started requiring the use of a night-light

_____

[13] *Bunn v. State*, 307 Ga. App. 381, 382-383 (1) (a) (705 SE2d 180) (2010) (citations and punctuation omitted).

8

around the time that she and C. W. moved in with Smith. The mother testified that after the disclosure of Smith's molestation of C. W., the child had attended counseling sessions. The evidence was sufficient to support the jury's finding that Smith's acts caused C. W. cruel mental pain.[14]

2. Smith contends that, for sentencing purposes, his convictions for child molestation and cruelty to children must be vacated because they merged with the crime of aggravated child molestation. We disagree.

In *Drinkard v. Walker*,[15] the Supreme Court of Georgia disapproved the "actual evidence" test and adopted the "required evidence" test for determining when one offense is included in another under OCGA § 16-1-6 (1).[16] Under the "required evidence" test, "[a] single act may constitute an offense that violates more than one statute, and if each statute requires proof of an additional fact which the other does

---

[14] See id.; *Keith*, supra at 822 (3) (evidence sufficient to support finding of cruel and excessive mental pain where victim became upset when recounting incident and had to go to counseling to help her cope).

[15] 281 Ga. 211 (636 SE2d 530) (2006).

[16] Id. at 214.

9

not, a[] . . . conviction under either statute does not exempt the defendant from prosecution and punishment under the other."[17]

(a) Smith's contention that the trial court erred in failing to merge the child molestation count into the aggravated child molestation count for sentencing is without merit since each of those counts was a separate and distinct crime.[18] Smith was charged with child molestation for touching C. W.'s vaginal area with his penis; and he was charged with aggravated child molestation for committing an act of sodomy, by touching C. W.'s anus with his penis. Therefore, the crimes did not factually merge.[19]

(b) Smith's contention that the trial court erred in failing to merge the cruelty to children counts into the aggravated child molestation count is also without merit. The offense of aggravated child molestation, but not cruelty to children, required proof that C. W. was a child under 16 years of age and that Smith performed an

---

[17] *Ledford v. State*, 289 Ga. 70, 72 (1) (709 SE2d 239) (2011) (citation and punctuation omitted).

[18] See *Sarratt v. State*, 299 Ga. App. 568, 573 (3) (683 SE2d 10) (2009).

[19] See *Sarratt*, supra; *Metts v. State*, 297 Ga. App. 330, 336 (5) (677 SE2d 377) (2009) (child molestation did not merge into aggravated child molestation where the offenses were proven by different acts of molestation).

immoral or indecent act upon C. W. with the intent to arouse or satisfy Smith's sexual desires. The offense of cruelty to children, but not aggravated child molestation, required proof that C. W. was a child under 18 years of age who was caused cruel mental pain. Each crime required proof of at least one additional element that the other did not. Accordingly, the cruelty to children crimes did not merge with the aggravated child molestation crime.[20]

*Judgment affirmed. Ellington, C. J., and Dillard, J., concur.*

---

[20] See *Chandler v. State*, 309 Ga. App. 611, 614-615 (3) (710 SE2d 826) (2011).